**Robert KNAPP, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 36567.**

Court of Criminal Appeals of Texas.

March 11, 1964.

No attorney of record on appeal for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally, James C. Brough and Lee P. Ward, Jr., Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is for murder; the punishment, forty years.

While the deceased was visiting a friend in Houston on August 13, he received a telephone call about 8 p. m., from a girl friend of the appellant. After the call the deceased became very nervous and said he had to leave to meet the appellant and his girl friend. In July the appellant had severely abused the deceased in his mother's presence, saying at the time: "I hate to do this in front of your church going mother, * * * but I am going to relieve her of her son."

The body of the deceased was discovered shortly after 6 p. m., August 14, in the grass near the fence on a rural private road in Harris County, and the officers were immediately notified. A deputy sheriff arrived at the scene at 6:50 p. m., and a medical examiner arrived at 8:30 p. m. The body was first identified by the driver's license and registration card in the wallet found in a pocket of the deceased's trousers.

From an examination of the body it was determined that death was caused by a stab wound in the left chest which penetrated the heart. The pathologist expressed the opinion that death occurred between midnight on August 13 and 4:30 p. m., August

14. No weapons were found on the body or at the scene.

Deputy Sheriff Middleton testified that on August 23, the appellant told him he killed the deceased by stabbing him with a knife and that the stabbing was suddenly precipitated by a violent argument between them about deceased's having informed the officers of appellant's connection and dealings with narcotics, and that appellant showed him the place where the stabbing occurred. Appellant also told Middleton that deceased had a pistol at the time, and that after he stabbed the deceased he took the pistol and hid it. Appellant then directed Middleton to the pistol, which contained three live shells. Middleton testified that there were no spent shells in the pistol or marks on the live shells showing they had misfired, and his testimony does not reflect that appellant told him that the deceased drew or threatened to use the pistol against him. He also directed Middleton to the trousers and shirt he was wearing when he stabbed the deceased and which he had hid after cutting out the blood spots and flushing the pieces down the commode.

Testifying in his own behalf, the appellant stated that he met the deceased while they were serving time in the penitentiary; that they had been good friends and frequently associated since their discharge; that his (appellant's) girl friend telephoned deceased on August 13, at which time he talked with the deceased and they agreed to meet later. When they met about 8 p. m., the deceased had a pistol which he wanted to use in a robbery he had planned, but the appellant did not want to use a pistol because he only wanted to burglarize. During this time they drove along in a car, observing prospective places to burglarize as both of them needed money. Because of heavy traffic they went to a rural road to talk over their plans. While out of the car, they argued about places to burglarize, and then began arguing about narcotics and whether it was the fault of the deceased that the federal narcotic officers were looking for appellant, and they became very angry. Deceased said he was in no physical condition to fight, pulled his pistol, and pointed it at the appellant. When appellant heard the click of the pistol, he ran onto the deceased to prevent him from pulling the trigger again and stabbed him with a switch blade knife thereby causing his death. After he stabbed the deceased, appellant picked up the pistol and hid it, as shown in the deputy sheriff's testimony, and later threw the knife away. After his arrest he took the officers to the pistol, but they were unable to find the knife. While testifying, he identified the clothing he was wearing when he stabbed the deceased, and from which he had cut the blood spots, flushing the pieces through the commode and throwing the clothing over a fence into some grass.

By formal bill of exception the appellant complains of the trial court's refusal to permit him to file his motion for new trial. The qualification of the bill recites that the court refused to permit the filing on the ground that it was presented more than thirty days after the verdict of the jury was returned. The appellant noted on the bill that he agreed with the qualification.

A motion for new trial is required to be filed within ten days after verdict of the jury, except when good cause is shown, the trial court may extend the time for filing. Art. 755 Vernon's Ann.C.C.P. There is no showing in the bill of good cause for the failure to timely file the motion for new trial. The bill presents no error.

The record contains no objections to the court's charge and no requested charges. The informal bills have been considered and they do not show error.

Finding the evidence sufficient to support the conviction, and no error appearing, the judgment is affirmed.

Opinion approved by the Court.